YM

FILED
FEBRUARY 11, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

08 C 883

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAMELA MORRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CHASE HOME FINANCE, LLC, a ) | |
| Delaware limited liability company, ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

## COMPLAINT

Now Comes Plaintiff, PAMELA MORRIS, by and through her attorney, and for her complaint against the defendant states as follows:

**Nature of the Action**

1. This action is brought by Plaintiff against the servicer of her home mortgage loan. This action seeks damages arising out of the mortgage loan servicer's reporting of derogatory information on Plaintiff's credit reports in violation of a written settlement agreement arising out of a prior lawsuit against the servicer for improper credit reporting. Plaintiff also seeks damages from the loan servicer for its reporting erroneous information during a 60 day period prohibited by the Real Estate Settlement Procedures Act, 12 U.S.C. 2601, et seq., due to Plaintiff's written inquiry to the loan servicer regarding the credit reporting dispute.

**Jurisdiction and Venue**

2. This Court has jurisdiction over the subject matter in this suit pursuant to 28 U.S.C. §1331 as this action arises under the laws of the United States. This Court has jurisdiction over Plaintiff's state law causes of action under this Court's diversity jurisdiction, pursuant to 28 U.S.C. §1332, as the parties are residents of different states and the amount in controversy is in excess of $75,000.

JUDGE ANDERSEN
MAGISTRATE JUDGE VALDEZ

3. This Court also has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367 as it is a claim that is so related to claims in this action within the Court's original jurisdiction that they form part of the same case or controversy.

4. This Court has jurisdiction over the defendant as it is doing business in the State of Illinois and has availed itself of the benefits and protections of its laws.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) as the defendant is a resident of this judicial district and the events giving rise to this action occurred within this judicial district.

**Parties**

6. **PAMELA MORRIS** is your Plaintiff and is a resident of Dolton, Illinois.

7. **CHASE HOME FINANCE, LLC** ("Chase") is a Delaware limited liability company with its principal place of business located in Iselin, New Jersey. Chase is in the business of servicing loans secured by mortgages on residential real estate in several states including Illinois.

**Facts Common to All Causes of Action**

8. In June of 2004 Plaintiff refinanced her home mortgage with a loan from lender named Providential Bancorp. In connection with the loan Plaintiff executed a Note requiring Plaintiff to make monthly payments beginning on August 1, 2004. The Note is secured by a first lien on Plaintiff's primary residence in a three-unit residential property.

9. From August 1, 2004 to November 1, 2004 Plaintiff made her regular mortgage payments to her loan servicer. Subsequently Plaintiff was contacted by

Chase and informed that the right to her future payment obligations had been transferred to it.

10. Although Plaintiff made her payments on time to Chase, Chase began to report to the major credit reporting bureaus that Plaintiff made each of her payments from August 1, 2004 to November 1, 2004 at least 30 days late.

11. Plaintiff contacted Chase on numerous occasions to attempt to rectify this discrepancy, including through written letter and telephone conversations. Despite being provided evidence of the timeliness of the August 1, 2004 through November 1, 2004 payments made to the prior loan servicers, including copies of cashed checks, Chase refused to correct the erroneous reports made to the credit bureaus.

12. Plaintiff brought suit against Chase for its actions in a lawsuit filed in the United States District Court for the Northern District of Illinois styled <u>Pamela Morris v. Chase Mortgage Services, et al.</u>, 05 C 1990 (hereinafter "2005 Lawsuit"). A copy of the complaint and its exhibits for the 2005 Lawsuit is attached hereto as Exhibit A.

13. The 2005 Lawsuit sought damages from Chase for its violations of the Real Estate Settlement Procedures Act, including Chase's charging of late fees to Plaintiff for payments she made to the prior servicer, and for making false reports to credit bureaus of late payments, which were in fact timely made to the prior servicer.

14. During the pendency of the 2005 Lawsuit Chase continued to report that Plaintiff was 30 days late each month.

15. On or about May 13, 2005 Chase entered into a written settlement agreement with Plaintiff regarding the 2005 Lawsuit. The settlement agreement required Chase to reverse all late fees that were outstanding on the loan and submit

updated reports for Plaintiff to Equifax, Trans Union, and Experian, indicating that any negative reporting made by Chase from November 2004 through to the date of the settlement agreement should be removed.  The settlement agreement expressly stated "Chase will not re-submit the Negative Reports."

16. The Settlement Agreement contains a confidentiality provision.  Therefore Plaintiff has chosen not to attach a copy of the Settlement Agreement to this pleading, so as to keep confidential the other parties and terms of the Settlement Agreement, except where relevant to Chase's conduct described herein.

17. It was Plaintiff's belief that the Settlement Agreement resolved the erroneous reports made by Chase from November of 2004 to June of 2005.

18. In February of 2007 Plaintiff made her regular mortgage payment, however Plaintiff forgot that her mortgage payment had recently increased due to an adjustment in the interest rate being charged on the loan.

19. On February 28, 2007 Plaintiff received a telephone call from a Chase representative notifying her that $32.00 remained to be paid for the month of February.

20. The Chase representative specifically informed Plaintiff that no adverse report had been made or would be made regarding the February payment if she made the payment over the telephone, at which time Plaintiff made a payment over the telephone to the Chase representative.

21. In June of 2007 Plaintiff learned that her revolving line of credit account secured with a mortgage on her home had been revoked.  Plaintiff contacted the lender and was told that the reason for the revocation was a recent reduction in her credit score and because of a recent report of a 30 day late payment for her home mortgage.

22.     Plaintiff immediately contacted Chase to inquire about the late payment reporting, Plaintiff was told that an error had occurred causing a report of a 30 day late payment in February and that it would immediately retract the late payment report from her credit history.  Shortly thereafter Plaintiff received a letter in the mail to this effect from Chase.

23.     In July of 2007 Plaintiff sought to refinance her mortgage on the property, in part to pay off the balance on the revoked line of credit as well as the Chase loan and replacing them with a loan from Bank of America.  In order to make sure that all issues with Chase had been resolved Plaintiff ordered a credit report on July 19, 2007, which did not show the February late payment reported by Chase.

24.     On August 8, 2007 Plaintiff received a loan commitment from Bank of America for a loan in the amount of $271,766.00.  However, on September 4, 2007 Plaintiff received a loan denial from Bank of America stating that the denial was based upon information reported to Trans Union.

25.     Plaintiff immediately requested another copy of the credit report from Trans Union, wherein Plaintiff found that Chase had not only re-reported the February 2007 late payment, but also reported that late payments had been made on the account five times prior to June of 2005.

26.     Meanwhile, on August 30, 2007 Plaintiff sought to make her August 2007 payment for the Chase loan.  Plaintiff made her payment by using Chase's website.

27.     Despite Plaintiff making her August payment within 30 days of its due date, Chase began reporting to the credit reporting bureaus that Plaintiff made her August 2007 payment more than 30 days late.

28. In an effort to resolve this matter with Chase and without litigation, Plaintiff wrote to Chase on September 13, 2007 to request an investigation of the erroneous reports. The letter was received by Chase by at least September 27, 2007.

29. Despite Chase's receipt of Plaintiff's letter, Chase continued to make reports to the credit bureaus of the erroneous information in at least October, November, and December of 2007, if not beyond.

30. During the month of October of 2007 Plaintiff obtained another copy of her credit report from Trans Union and noted that Chase was continuing to report the late payments for February of 2007 and January of 2005 to May of 2005. A review of the credit report also revealed that no other late payments were reported by any other creditor on any other credit account.

31. In November of 2007 Plaintiff decided to make repairs to her property using other credit, namely her American Express account that had a credit limit of $34,000. When attempting to pay for her purchases, Plaintiff was informed by the store clerk that her credit card was not being honored.

32. Plaintiff left the store embarrassed.

33. Plaintiff immediately contacted American Express, who informed her that her credit limit had been reduced due to a "history of late payments." The loss of the credit line also caused Plaintiff to lose the benefit of substantial airline miles that she had accrued on the credit account. Ironically, another benefit lost by Plaintiff was the opportunity to earn additional airline miles by refinancing with Chase.

34. On information and belief, the "history of late payments" referred to in the American Express letter includes the reporting of late payments for the following months: August of 2007, February of 2007, and January of 2005 to May of 2005.

## COUNT I – BREACH OF SETTLEMENT AGREEMENT

35. Plaintiff realleges paragraphs 1 to 34 as though they were fully realleged herein.

36. Plaintiff entered into an agreement with Chase whereby she agreed to compromise her valid causes of action against Chase, as stated in the 2005 Lawsuit, in exchange for Chase removing any and all adverse information that was reported from November of 2004 to June of 2005.

37. Plaintiff completed all of her obligations under the settlement agreement, including the release of Chase of liability for its prior RESPA violations and her dismissal of the 2005 Lawsuit.

38. After the execution of the settlement agreement, Chase resubmitted information to credit reporting bureaus, including Trans Union, that Plaintiff made late payments between the time period of November of 2004 to June of 2005.

39. As a result of Chase's violation of the settlement agreement, Plaintiff suffered substantial monetary damages including the loss of her Bank of America loan and the reduction and revocation of her revolving lines of credit with other lenders.

40. As for Plaintiff's costs and attorney's fees incurred in this matter the settlement agreement provides as follows:

> If a party breaches any provision of this Agreement, and if counsel is employed to enforce this Agreement, then the breaching party will pay to the other party all: (a) costs; (b) reasonable fees and charges of attorneys and their firms; and (c) reasonable charges of experts,

investigators and other agents incurred in the enforcement of this Agreement, regardless of whether litigation is commenced.

WHEREFORE Plaintiff, PAMELA MORRIS, respectfully requests this Court enter judgment in her favor and against CHASE HOME FINANCE, LLC in an amount to be proven at trial, award her costs and attorney's fees as allowed under the Settlement Agreement, and any other relief this Court finds just and reasonable.

## COUNT II
## REPORTING TO CREDIT BUREAUS IN VIOLATION OF THE
## REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)

41. Plaintiff realleges paragraphs 1 to 34 as though they were fully realleged herein.

42. The Real Estate Settlement Practices Act reads in pertinent part:

**(3) Protection of credit rating**

During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of title 15).

12 U.S.C. §2605(e)(3).

43. The servicing of Plaintiff's home mortgage loan is subject to the terms and conditions set forth by statute in RESPA.

44. Plaintiff's letter of September 13, 2007 is a qualified written request as that term is defined by RESPA, 12 U.S.C. §2605(e)(1)(B).

45. Chase reported derogatory information to the three major credit bureaus relating to the disputed payments during the 60 day period following the receipt of Plaintiff's qualified written request.

46. Chase's report on Plaintiff's credit history has caused plaintiff to be denied credit and to have current creditors revoke or reduce credit already granted.

WHEREFORE Plaintiff, PAMELA MORRIS, respectfully requests this Court enter judgment in her favor and against defendant CHASE HOME FINANCE, LLC for her actual damages in an amount to be proven at trial; award her statutory damages in the amount of $1,000.00; award her costs of bringing this action including reasonable attorney's fees, and other relief this Court finds necessary and just.

    Respectfully Submitted,

    Plaintiff

    */s/ Lloyd Brooks*

    _____
    Her Attorney

ARDC No. 6271994
Lloyd J. Brooks
The Brooks Law Firm
15008 Woodlawn Avenue
Dolton, Illinois 60419
(708) 841-8000 Telephone
(708) 841-8080 Facsimile
E-mail: lloyd.brooks@thebrooksfirm.com
**Attorney for Pamela Morris**

### Jury Trial Demand

Plaintiff seeks trial by jury for all of her claims.

    */s/ Lloyd Brooks*

    _____
    Plaintiff's Attorney