IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAMELA MORRIS,                )<br>                                              )<br>                    Plaintiff,      )     08 cv 883<br>                                              )<br>v.                                          )<br>                                              )<br>CHASE HOME FINANCE, LLC, a  )   Judge Wayne R. Anderson<br>Delaware limited liability company, )<br>                                              )   Magistrate Judge Valdez<br>                    Defendant.    ) | |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

Now Comes PAMELA MORRIS, by and through her attorney, Lloyd Brooks, to submit this memorandum in support of her motion for summary judgment as to the issue of liability against Chase Home Finance, LLC ("Chase").

**Introduction and Summary**

Count I of this action arises from Chase's breach of an express agreement not to report certain adverse information regarding Ms. Morris to credit bureaus. The agreement was reached as a resolution to an earlier lawsuit wherein Chase made erroneous reports to the major credit bureaus regarding Ms. Morris' loan payment history. In violation of that agreement Chase re-submitted the adverse information to at least one credit bureau. Chase has admitted each and every element of Ms. Morris' claim that is necessary to show a breach of contract took place.

Count II of this action seeks damages arising out of Chase's reporting of adverse information regarding Ms. Morris' account after its receipt of a letter from Ms. Morris disputing Chase's accounting of her payments in violation of §2605(e) of the Real Estate Settlement Procedures Act (RESPA). There is no material dispute of fact that Chase received Ms. Morris letter and that it subsequently continued to make the adverse reports to credit bureaus regarding Ms. Morris.

Ms. Morris has been severely injured by Chase's submissions of the late payment reports. The wrongful reports have caused a favorable loan to Ms. Morris to be declined after the lender obtained a credit report containing Chase's late payment reports. Additionally, several other creditors revoked open credit agreements with Ms. Morris. However, at this time Ms. Morris seeks a finding by this Court of liability against Chase, allowing the parties to proceed in this matter as to damages only.

**Summary of Undisputed Facts**

In June of 2004 Ms. Morris refinanced her home mortgage with a loan from a mortgage lender named Providential Bancorp. (Morris' Statement of Material Facts, ¶2). Subsequently Ms. Morris was contacted by Chase as the new servicer of her loan. (Stmnt. Facts ¶4) Although Ms. Morris made her payments on time to Chase, Chase began to report to the major credit reporting agencies that Ms. Morris made each of her payments from August 1, 2004 to November 1, 2004 at least 30 days late. (Stmnt. Facts ¶5) After attempts to resolve the matter amicably failed, Ms. Morris brought suit against Chase for its actions in a lawsuit filed in the United States District Court for the Northern District of Illinois styled <u>Pamela Morris v. Chase Mortgage Services, et al.</u>, 05 C 1990 (hereinafter "Morris v. Chase I"). A copy of the complaint and its exhibits for <u>Morris v. Chase I</u> are attached as Exhibit B to Ms. Morris' Statement of Material Facts.

On or about May 13, 2005 Chase entered into a written settlement agreement with Ms. Morris regarding <u>Morris v. Chase I</u>. The settlement agreement required Chase to submit updated reports for Ms. Morris to Equifax, Trans Union, and Experian, indicating that any negative reporting made by Chase from November 2004 through to the date of the settlement agreement should be removed. (Stmnt. Facts ¶8) The

settlement agreement expressly stated "Chase will not re-submit the Negative Reports." (Stmnt. Facts ¶8)

After learning that Ms. Morris was denied credit due to a recent report of a 30 day late payment for her home mortgage, she immediately contacted Chase to inquire about the late payment reporting, Ms. Morris was told that an error had occurred causing a report of a 30 day late payment in February, 2007 and that it would immediately retract the late payment report from her credit history. (Stmnt. Facts ¶11, 12)  Shortly thereafter Ms. Morris received a letter in the mail to this effect from Chase. (Stmnt. Facts ¶12)

In July of 2007 Ms. Morris sought to refinance the Chase loan; replacing it with a loan from Bank of America. (Stmnt. Facts ¶13)  In order to make sure that all issues with Chase had been resolved Ms. Morris ordered a credit report on July 19, 2007, which did not show the February late payment reported by Chase. (Stmnt. Facts ¶13)  On August 8, 2007 Ms. Morris received a loan commitment from Bank of America for a loan in the amount of $271,766.00. (Stmnt. Facts ¶14)  However, on September 4, 2007 Ms. Morris received a loan denial from Bank of America stating that the denial was based upon information reported to Trans Union. (Stmnt. Facts ¶14)  Ms. Morris immediately requested another copy of the credit report from Trans Union, wherein Ms. Morris found that Chase had not only re-reported the February 2007 late payment, but also reported five late payments on the account in 2005. (Stmnt. Facts ¶15)

On September 13, 2007 Ms. Morris wrote to Chase to request an investigation of the erroneous reports discussed above.  The letter was received by Chase before September 27, 2007. (Stmnt. Facts ¶17)  During the month of October of 2007 Ms. Morris obtained another copy of her credit report from Trans Union and noted that

Chase was continuing to report the late payments for February of 2007 and January of 2005 to May of 2005. (Stmnt. Facts ¶19)  A review of the credit report also revealed that no other late payments were reported by any other creditor on any other credit account. (Stmnt. Facts ¶19)

In November of 2007 Ms. Morris decided to make repairs to her property using other credit, namely her American Express account that had a credit limit of $34,000. (Stmnt. Facts ¶20)  When attempting to pay for her purchases, Ms. Morris was informed by the store clerk that her credit card was not being honored. (Stmnt. Facts ¶20)  Ms. Morris left the store embarrassed and immediately contacted American Express, who informed her that her credit limit had been reduced due to a "history of late payments." The only late payments found on the credit reports were those made by Chase. (Stmnt. Facts ¶20)

**Chase is Liable to Ms. Morris For the Damages She Has (and Is) Incurring Due to Its Breach of the Settlement Agreement from Morris v. Chase I.**

Count I of Ms. Morris's complaint seeks damages against Chase for its breach of the settlement agreement reached in connection with <u>Morris v. Chase I</u> suit.  In order for liability to exist against Chase, Ms. Morris must prove (1) the existence of a contract, (2) a material breach of the terms of the contract, (3) Ms. Morris's compliance with the contract, and (4) damages flowing from the breach. *Priebe v. Autobarn*, Ltd., 240 F.3d 584 (7th Cir. 2001)  Although, damages have been adequately pled, Ms. Morris only seeks to show Chase's liability for breach of contract and will proceed to litigation and try the issues of damages, if necessary.

Ms. Morris has alleged, and Chase has admitted all of the necessary elements to show a breach of contract.

4

**Chase Admits the Existence of a Contract**

The Morris v. Chase I suit was resolved by a written settlement agreement that required her to release Chase from the claims asserted and to dismiss the lawsuit. The terms of the settlement agreement were agreed to by Chase, which required it to reverse adverse information reported to several credit reporting agencies, including Trans Union. Chase also agreed not to re-submit the adverse information. Chase expressly admits to the existence of the settlement agreement and the requirement to never re-submit the adverse information. (Chase Answer ¶¶12, 13, 15).

**Chase's Re-Submission Of The Adverse Information To A Credit Bureau Is A Material Breach Of Contract**

Chase breached the contract by reporting the adverse information to at least Trans Union. There is no dispute that Chase re-submitted the information to at least Trans Union. Ms. Morris has attached a copy of the credit report dated October 19, 2007 as Exhibit E to her Statement of Facts. The credit report shows reports by Chase of late payments in February of 2007 and January through May of 2005. If that were not enough, Chase admits it resubmitted the adverse information in response to paragraph 38 of Ms. Morris' complaint as follows:

> 38. After the execution of the settlement agreement, Chase resubmitted information to credit reporting bureaus, including Trans Union, that Plaintiff made late payments between the time period of November of 2004 to June of 2005.
>
> ANSWER: Chase admits that, in September 2007, the information deleted pursuant to the settlement in Morris I was accidently re-reported due to a manual processing error. As soon as Plaintiff brought this error to Chase's attention, Chase contacted each credit reporting agency and the information was deleted again. Chase denies all remaining allegation [sic] in paragraph 38.

5

Although Chase makes several irrelevant qualifications within its answer, the central allegation is admitted; Chase resubmitted the adverse information from the year 2005 to credit bureaus, in violation of the settlement agreement. Regardless of whether Chase can show that the resubmission was an accident, a breach of contract occurred.

**Ms. Morris Complied With Her Obligations Under The Prior Settlement Agreement**

Ms. Morris complied with her obligations under the contract. As noted earlier, Ms. Morris's agreement with Chase required her to release her from the claims alleged in Morris v. Chase I and to dismiss the lawsuit. Morris complied with her obligations, which is admitted by Chase. (Chase Ans. ¶¶37). There is no material issue of fact regarding Ms. Morris's compliance with her contractual obligations.

**Chase Is Liable For Its Violation Of RESPA By Making Reports Of Adverse Information To Credit Reporting Agencies During The 60 Day Window After Receiving Ms. Morris' Qualified Written Request Regarding Its Errors**

Count II of Ms. Morris' complaint seeks damages arising from Chase's continued reporting of disputed payments as late during a time that reporting was prohibited under the Real Estate Settlement Procedures, Act, 12 U.S.C. §2605(e). RESPA reads in pertinent part:

> **(3) Protection of credit rating**
>
> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of title 15).

The intention of the provision is clear, while a consumer is disputing the application of payments or charges on a loan, the lender may not report any adverse information

regarding the payments during a 60 day window to allow the dispute to be resolved and to protect the consumer's credit rating.

Chase violated RESPA's prohibition by making credit reports during the 60 day window.  Ms. Morris has alleged, and Chase has admitted, that Chase received the September 13, 2007 letter sometime before September 27, 2007.  (Chase Ans. ¶¶27, 28).  Chase also admits that despite the receipt of the letter, it continued to make reports of late payments regarding Ms. Morris' account. (Chase Ans. ¶28).

**Chase's Denials and Defenses Do Not Shield If From Liability For Ms. Morris' RESPA Claim**

First, attached as an Exhibit to this memorandum is Chase's First Amended Affirmative Defense, wherein it asserts "Plaintiff's complaint fails to state a claim under RESPA, 12 U.S.C. §2601 et seq."  Chase fails to indicate what, if any, element of a RESPA claim is not alleged, nonetheless the defense is meritless.  Morris has alleged in her complaint and Chase has admitted in its answer that the loan is subject to RESPA.  Chase has also admitted it is Ms. Morris' loan servicer and received the September 13, 2007 letter, which contained information identifying Ms. Morris and the loan.  Chase has also admitted it reported adverse information regarding her payment history, even during the 60 day period following its receipt of the letter.  Ms. Morris' evidence is sufficient to prove all of the elements of a 12 U.S.C. §2605(e) claim.

Next, Chase denies the September 13, 2007 letter is a qualified written request. See Chase Ans. ¶44.  However, Chase's denial does not pass the smell test.  A copy of Ms. Morris's September 13, 2007 letter is attached as Exhibit D to her Statement of Facts, completely debunking Chase's assertion.

7

According to RESPA, a qualified written request is a written correspondence that "includes, or otherwise enables the servicer to identify, the name and account of the borrower; and includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C.§2605(c)(1)(B).  The September 13th letter includes a reference to Ms. Morris, the property address, the loan account number and provides a detailed description of her dispute with Chase over its reporting of the August payment as more than 30 days late.  Therefore, the September 13, 2007 letter is undeniably a qualified written request, entitling Ms. Morris to the protections of §2605(e)(3).

In the remaining defense specifically referencing the RESPA claim, Chase makes a one sentence assertion that Ms. Morris' claim is barred by 12 U.S.C. §2605(f)(4).  Chase's ambiguous and insufficient statement is unavailing.  §2605(f)(4) provides a lender a safe harbor for errors made while servicing a loan, if within 60 days of discovering an error <u>and before</u> receipt of a written notice of the error from the borrower, the servicer notifies the person concerned of the error and makes adjustments as necessary .  The safe harbor does not protect Chase.  Chase did not make any adjustments to Ms. Morris' credit reporting history regarding the 2005 adverse information until <u>after</u> Ms. Morris wrote to Chase. (Chase Ans. ¶¶28, 29, and 38) Chase's own admissions of fact show that they are not entitled to protection under the safe harbor.  There is no material issue of fact regarding Chase's liability for Ms. Morris' damages arising from its violation of RESPA's servicer requirements.

**<u>Chase's Remaining Affirmative Defenses Do Not Shield It From Liability</u>**

Chase's remaining defenses offered against Ms. Morris' claims are insufficiently plead and do not bar her claims as a matter of law.

First, Chase invokes the doctrine of unclean hands; however the defense is inadequately pled and is the subject of a motion to strike on that ground, which is incorporated herein by reference. Even if Chase properly pleads its defense it is inapplicable. The defense of unclean hands is an equitable defense to equitable claims and does not preclude Ms. Morris' claims, which are exclusively for money damages. *Chow v. Aegis Mortgage Corp.*, 286 F. Supp. 2d 956 (N.D. Ill. 2005) (unclean hands defense is not available against actions at law for money damages); *McCabe v. Crawford*, 272 F. Supp. 2d 736 (N.D. Ill. 2003)(same); *LCI Intern. V. Telecom Corp.*, 978 F. Supp. 799 (N.D. Ill. 1998) (unclean hands defense not available in breach of contract claim).

Next, Chase alleges that Ms. Morris' counsel is a necessary party to this action and his absence bars Ms. Morris' claims. Chase's defense is nothing more than a thinly veiled smoke screen. Morris cannot be precluded from seeking her individual damages to her credit history and credit reputation because another party has not decided to bring a lawsuit against Chase for damages he may or may not have incurred. The fact of the matter is that Chase breached its agreement with Ms. Morris, individually, by submitting information on her credit report and injuring her. Ms. Morris' damages are her own and are not shared by any co-borrower. Chase has failed to point to any rule of law, requiring all persons who may or may not have a viable claim to sue in order to anyone to sue.

9

Finally, Chase asserts that Ms. Morris' claim is barred "by her failure to perform her obligations under the mortgage loan agreement, as well as her failure to mitigate her alleged damages." Again Chase is vague as to any facts to support its affirmative defense. Nonetheless, Chase is off base. The contract at issue is the settlement agreement between Ms. Morris and Chase arising out of the Morris v. Chase I lawsuit. Ms. Morris completed her obligations under that contract and is entitled to her claims arising out of Chase's failure to adhere to its obligations under the settlement agreement. To the extent that Chase may argue that Ms. Morris subsequently paid her mortgage in an untimely manner, it is irrelevant. Even if Chase could provide evidence that Ms. Morris made untimely payments, it would not be a defense to Chase re-submitting information regarding the 2005 payments or its failure to cease reporting after it received the September 13, 2007 letter.

**Ms. Morris Has Properly Alleged Her Damages, But Does Not Seek Summary Judgment As To That Issue**

Ms. Morris has clearly alleged that Chase's resubmission of the adverse information from 2005 to at least Trans Union has caused to be denied a loan from Bank of America and also to suffer other adverse credit decisions from current creditors. Ms. Morris received a commitment from Bank of America showing that she was qualified to borrow $271,766.00 to refinance the loan being serviced by Chase. However, after Chase resubmitted the adverse information to at least Trans Union, Bank of America rescinded its offer to make a loan to Ms. Morris due to recent information received by Trans Union. Ms. Morris's review of her Trans Union credit report showed only adverse information being reported by Chase. There is a direct link

between Chase's adverse reports and Bank of America's denial of the refinanced home loan.

Ms. Morris also suffered adverse credit restrictions from her current creditors. For instance, American Express reduced the amount of credit available to Ms. Morris due to a "history of late payments." However, the only late payment shown anywhere on Ms. Morris's credit report were those being reported by Chase. There is no question that Chase's adverse reports to Trans Union caused Ms. Morris to suffer adverse action by American Express. Ms. Morris has suffered substantial damages from these injuries, but does not seek the entry of judgment against Chase as to the damage amount, as discovery and investigation continues as to those matters.

**Conclusion**

For all of the reasons stated in this memorandum, this Court should grant Ms. Morris partial summary judgment, making a finding that Chase is liable for breach of contract and its violation of the Real Estate Settlement Procedures Act.

Respectfully Submitted,

*/s/ Lloyd Brooks*

_____
Plaintiff's Attorney

ARDC No. 6271994
Lloyd J. Brooks
The Brooks Law Firm
15008 Woodlawn Avenue
Dolton, Illinois 60419
(708) 841-8000 Telephone
(708) 841-8080 Facsimile
E-mail: lloyd.brooks@thebrooksfirm.com
**Attorney for Pamela Morris**