IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 C 883 |
| | ) | |
| CHASE HOME FINANCE, LLC, a | ) | |
| Delaware limited liability company, | ) | |
| | ) | |
| Defendant. | ) | |

CHASE HOME FINANCE LLC'S ANSWER AND
AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant Chase Home Finance LLC ("Chase"), by its undersigned attorneys, hereby

responds to Plaintiff's Complaint as follows:

NATURE OF THE ACTION

1.    This action is brought by Plaintiff against the servicer of her home mortgage loan.
This action seeks damages arising out of the mortgage loan servicer's reporting of derogatory
information on Plaintiff's credit reports in violation of a written settlement agreement arising out
of a prior lawsuit against the servicer for improper credit reporting.  Plaintiff also seeks damages
from the loan servicer for its reporting erroneous information during a 60 day period prohibited
by the Real Estate Settlement Procedures Act, 12 U.S.C. 2601, et seq., due do to Plaintiff's
written inquiry to the loan servicer regarding the credit reporting dispute.

ANSWER:    Chase admits only that Plaintiff brings this action against it in its capacity

as the servicer of Plaintiff's mortgage loan and that Plaintiff purports to seek damages for breach

of contract and a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*

("RESPA").  Chase denies all remaining allegations in paragraph 1 and denies that Plaintiff is

entitled to any relief in connection with the claims asserted in this lawsuit.

JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter in this suit pursuant to 28
U.S.C. § 1331 as this action arises under the laws of the United States.  This Court has
jurisdiction over Plaintiff's state law causes of action under this Court's diversity jurisdiction,

pursuant to 28 U.S.C. § 1332, as the parties are residents of different states and the amount in controversy is in excess of $75,000.

ANSWER: Chase admits the allegations in the first sentence of paragraph 2. With respect to the allegations in the second sentence of paragraph 2, Chase denies the Court has diversity jurisdiction because the amount in controversy does not exceed $75,000.00.

3. This Court also has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 as it is a claim that is so related to claims in this action within the Court's original jurisdiction that they form part of the same case or controversy.

ANSWER: Chase denies the allegations in paragraph 3.

4. This Court has jurisdiction over the defendant as it is doing business in the State of Illinois and has availed itself of the benefits and protection of its laws.

ANSWER: Chase admits that it is subject to this Court's jurisdiction.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as the defendant is a resident of this judicial district and the events giving rise to this action occurred within this judicial district.

ANSWER: Chase admits that venue is proper in this District.

## PARTIES

6. PAMELA MORRIS is your Plaintiff and is a resident of Dolton, Illinois.

ANSWER: Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6 and, accordingly, denies those allegations.

7. CHASE HOME FINANCE, LLC ("Chase") is a Delaware limited liability company with its principal place of business located in Iselin, New Jersey. Chase is in the business of servicing loans secured by mortgages on residential real estate in several states including Illinois.

ANSWER: Chase admits the allegations in paragraph 7.

## FACTS COMMON TO ALL CAUSES OF ACTION

8. In June of 2004 Plaintiff refinanced her home mortgage with a loan from [sic] lender named Providential Bancorp. In connection with the loan Plaintiff executed a Note requiring Plaintiff to make monthly payments beginning on August 1, 2004. The Note is secured by a first lien on Plaintiff's primary residence in a three-unit residential property.

ANSWER:    Chase admits the allegations in the first and second sentences of paragraph

8. With respect to the third sentence in paragraph 8, Chase admits that the loan is secured by a

first lien and that the property is a three unit apartment building. Chase lacks knowledge or

information sufficient to form a belief as to whether the property is Plaintiff's "primary

residence" and, accordingly, denies that allegation.

9.    From August 1, 2004 to November 1, 2004, Plaintiff made her regular mortgage
payments to her loan servicer. Subsequently Plaintiff was contacted by Chase and informed that
the right to her future payment obligations had been transferred to it.

ANSWER:    Chase lacks knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in the first sentence of paragraph 9 and, accordingly, denies

those allegations. With respect to the allegations in the second sentence, Chase admits the

servicing of Plaintiff's loan was assigned to Chase in October 2004.

10.    Although Plaintiff made her payments on time to Chase, Chase began to report to
the major credit reporting bureaus that Plaintiff made each of her payments from August 1, 2004
to November 1, 2004 at least 30 days late.

ANSWER:    Chase denies the allegations in paragraph 10.

11.    Plaintiff contacted Chase on numerous occasions to attempt to rectify this
discrepancy, including through written letter and telephone conversations. Despite being
provided evidence of the timeliness of the August 1, 2004 through November 1, 2004 payments
made to the prior loan servicers, including copies of cashed checks, Chase refused to correct the
erroneous reports made to the credit bureaus.

ANSWER:    Chase denies the allegations in paragraph 11.

12.    Plaintiff brought suit against Chase for its actions in a lawsuit filed in the United
States District Court for the Northern District of Illinois styled *Pamela Morris v. Chase
Mortgage Services, et al.*, 05 C 1990 (hereinafter "2005 Lawsuit"). A copy of the complaint and
its exhibits for the 2005 Lawsuit is attached hereto as Exhibit A.

ANSWER:    Chase admits that Plaintiff previously filed a lawsuit in this District

against Chase Mortgage Services Inc., Countrywide Home Loans Inc., and New Century

Mortgage Corporation, which lawsuit was captioned *Pamela Morris v. Chase Mortgage Services*

3

*Inc., et al.*, No. 05 C-1990 ("Morris I"). Chase also admits that a copy of the complaint in Morris I is attached as Exhibit A. Chase denies any remaining allegations in paragraph 12.

13. The 2005 Lawsuit sought damages from Chase for its violations of the Real Estate Settlement Procedures Act, including Chase's charging of late fees to Plaintiff for payments she made to the prior servicer, and for making false reports to credit bureaus of late payments, which were in fact timely made to the prior servicer.

ANSWER: Chase admits only that in Morris I Plaintiff sought damages for the allegedly improper imposition and reporting of late fees by Chase and other defendants. Chase denies that it improperly imposed or reported any late fees in violation of RESPA, as alleged in Morris I.

14. During the pendency of the 2005 Lawsuit Chase continued to report that Plaintiff was 30 days late each month.

ANSWER: Chase denies the allegations in paragraph 14.

15. On or about May 13, 2005 Chase entered into a written settlement agreement with Plaintiff regarding the 2005 Lawsuit. The settlement agreement required Chase to reverse all late fees that were outstanding on the loan and submit updated reports for Plaintiff to Equifax, Trans Union, and Experian, indicating that any negative reporting made by Chase from November 2004 through to the date of the settlement agreement should be removed. The settlement agreement expressly stated "Chase will not re-submit the Negative Reports."

ANSWER: Chase admits that on or about May 13, 2005, the parties in Morris I entered into a settlement without any party admitting liability. Under the settlement, Chase reversed the late fees at issue in the lawsuit and contacted Trans Union, Experian and Equifax to request the deletion of negative reporting made in connection with the payments at issue in that lawsuit. Chase further admits that the settlement in Morris I provided that it would not *resubmit* negative reports at issue in that lawsuit.

16. The Settlement Agreement contains a confidentiality provision. Therefore Plaintiff has chosen not to attach a copy of the Settlement Agreement to this pleading, so as to keep confidential the other parties and terms of the Settlement Agreement, except where relevant to Chase's conduct described herein.

ANSWER: With respect to the allegation in the first sentence of paragraph 16, Chase admits that the settlement agreement in Morris I contains a confidentiality provision. With respect to the allegations in the second sentence of paragraph 16, Chase lacks knowledge or information sufficient to form a belief as to the truth of those allegations and, accordingly, denies those allegations.

17. It was Plaintiff's belief that the Settlement Agreement resolved the erroneous reports made by Chase from November 2004 to June of 2005.

ANSWER: Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 and, accordingly, denies those allegations.

18. In February of 2007 Plaintiff made her regular mortgage payment, however Plaintiff forgot that her mortgage payment had recently increased due to an adjustment in the interest rate being charged on the loan.

ANSWER: Chase denies the allegations in paragraph 18.

19. On February 28, 2007 Plaintiff received a telephone call from a Chase representative notifying her that $32.00 remained to be paid for the month of February.

ANSWER: Chase admits that it contacted Plaintiff in February 2007 regarding her failure to timely make her mortgage payment due on February 1, 2007. Chase denies the remaining allegations in paragraph 19.

20. The Chase representative specifically informed Plaintiff that no adverse report had been made or would be made regarding the February payment if she made the payment over the telephone, at which time Plaintiff made a payment over the telephone to the Chase representative.

ANSWER: Chase denies the allegations in paragraph 20.

21. In June of 2007 Plaintiff learned that her revolving line of credit account secured with a mortgage on her home had been revoked. Plaintiff contacted the lender and was told that the reason for the revocation was a recent reduction in her credit score and because of a recent report of a 30 day late payment for her home mortgage.

ANSWER: Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 and, accordingly, denies those allegations.

22.　Plaintiff immediately contacted Chase to inquire about the late payment reporting, Plaintiff was told that an error had occurred causing a report of a 30 day late payment in February and that it would immediately retract the late payment report from her credit history. Shortly thereafter Plaintiff received a letter in the mail to this effect from Chase.

ANSWER:　Chase admits that on or about June 6, 2007, Plaintiff contacted Chase to inquire about its reporting of her mortgage payment that was due on February 1, 2007, and also admits that, as a courtesy, it agreed to alter that reporting. Chase also admits that it sent Plaintiff a letter confirming that it had altered its reporting in connection with the payment due on February 1, 2007. Chase denies any remaining allegations in paragraph 22.

23.　In July of 2007 Plaintiff sought to refinance her mortgage on the property, in part to pay off the balance on the revoked line of credit as well as the Chase loan and replacing them with a loan from Bank of America. In order to make sure that all issues with Chase had been resolved Plaintiff ordered a credit report on July 19, 2007, which did not show the February late payment reported by Chase.

ANSWER:　Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 and, accordingly, denies those allegations.

24.　On August 8, 2007 Plaintiff received a loan commitment from Bank of America for a loan in the amount of $271,766.00. However, on September 4, 2007 Plaintiff received a loan denial from Bank of America stating that the denial was based upon information reported to Trans Union.

ANSWER:　Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 and, accordingly, denies those allegations.

25.　Plaintiff immediately requested another copy of the credit report from Trans Union, wherein Plaintiff found that Chase had not only re-reported the February 2007 late payment, but also reported that late payments had been made on the account five times prior to June of 2005.

ANSWER:　Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 and, accordingly, denies those allegations.

26.　Meanwhile, on August 30, 2007 Plaintiff sought to make her August 2007 payment for the Chase loan. Plaintiff made her payment by using Chase's website.

ANSWER:    Chase admits that on or about August 30, 2007, Plaintiff accessed Chase's

website to arrange to make the mortgage payment that was due on August 1, 2007. Chase denies

that Plaintiff's August 1, 2007 payment was made to Chase on August 30, 2007.

27.    Despite Plaintiff making her August payment within 30 days of its due date, Chase began reporting to the credit reporting bureaus that Plaintiff made her August 2007 payment more than 30 days late.

ANSWER:    Chase denies that Plaintiff's August 2007 payment was made within 30

days of its due date and states that Chase did not receive that payment until September 4, 2007.

Chase admits that later reported Plaintiff's August 2007 payment as 30 days late.

28.    In an effort to resolve this matter with Chase and without litigation, Plaintiff wrote to Chase on September 13, 2007 to request an investigation of the erroneous reports. The letter was received by Chase by at least September 27, 2007.

ANSWER:    Chase admits that, on or about September 13, 2007, Plaintiff sent a letter

to Chase regarding the payment that was due on August 1, 2007. Chase responded to that letter

on September 27, 2007, advising Plaintiff that her mortgage payment due on August 1, 2007 was

not received until September 4, 2007. Chase denies all remaining allegations in paragraph 28.

29.    Despite Chase's receipt of Plaintiff's letter, Chase continued to make reports to the credit bureaus of the erroneous information in at least October, November, and December of 2007, if not beyond.

**ANSWER:**    Chase admits that, after sending Plaintiff a letter on September 27, 2007,

advising her that the August 2007 payment was, in fact, thirty days late, it reported that payment

as such. Chase denies any remaining allegations in paragraph 29.

30.    During the month of October of 2007 Plaintiff obtained another copy of her credit report from Trans Union and noted that Chase was continuing to report the late payments for February of 2007 and January of 2005 to May of 2005. A review of the credit report also revealed that no other late payments were reported by any other creditor on any other credit account.

ANSWER:    Chase lacks knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in paragraph 30 and, accordingly, denies those allegations.

7

31. In November of 2007 Plaintiff decided to make repairs to her property using other credit, namely her American Express account that had a credit limit of $34,000. When attempting to pay for her purchases, Plaintiff was informed by the store clerk that her credit card was not being honored.

ANSWER: Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 and, accordingly, denies those allegations.

32. Plaintiff left the store embarrassed.

ANSWER: Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 and, accordingly, denies those allegations.

33. Plaintiff immediately contacted American Express, who informed her that her credit limit had been reduced due to a "history of late payments." The loss of the credit line also caused Plaintiff to lose the benefit of substantial airline miles that she had accrued on the credit account. Ironically, another benefit lost by Plaintiff was the opportunity to earn additional airline miles by refinancing with Chase.

ANSWER: Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 and, accordingly, denies those allegations.

34. On information and belief, the "history of late payments" referred to in the American Express letter includes the reporting of late payments for the following months: August of 2007, February of 2007, and January of 2005 to May of 2005.

ANSWER: Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 and, accordingly, denies those allegations.

## COUNT I
## BREACH OF SETTLEMENT AGREEMENT

35. Plaintiff realleges paragraphs 1 to 34 as though they were fully realleged herein.

ANSWER: Chase expressly incorporates its responses to paragraphs 1 through 34 as if fully set forth in response to paragraph 35.

36. Plaintiff entered into an agreement with Chase whereby she agreed to compromise her valid causes of action against Chase, as stated in the 2005 Lawsuit, in exchange for Chase removing any and all adverse information that was reported from November of 2004 to June of 2005.

8

ANSWER: Chase denies the allegations in the first sentence of paragraph 36 in that it denies Plaintiff had any *valid* causes of action against Chase in Morris I. With respect to the remaining allegations in paragraph 36, Chase admits that, pursuant to the settlement agreement in Morris I, it agreed to request the removal of negative information reported in connection with Plaintiff's mortgage loan for the months of November 2004 through June of 2005.

37. Plaintiff completed all of her obligations under the settlement agreement, including the release of Chase of liability for its prior RESPA violations and her dismissal of the 2005 Lawsuit.

ANSWER: Chase admits only that, under the settlement agreement in Morris I, Plaintiff released Chase from any RESPA violations and dismissed the lawsuit. Chase denies all remaining allegations in paragraph 37 on the basis that they contain legal conclusions. To the extent any response is required, all remaining allegations in paragraph 37 are denied.

38. After the execution of the settlement agreement, Chase resubmitted information to credit reporting bureaus, including Trans Union, that Plaintiff made late payments between the time period of November of 2004 to June of 2005.

ANSWER: Chase admits that, in September 2007, the information deleted pursuant to the settlement in Morris I was accidently re-reported due to a manual processing error. As soon as Plaintiff brought this error to Chase's attention, Chase contacted each credit reporting agency and the information was deleted again. Chase denies all remaining allegation in paragraph 38.

39. As a result of Chase's violation of the settlement agreement, Plaintiff suffered substantial monetary damages including the loss of her Bank of America loan and the reduction and revocation of her revolving lines of credit with other lenders.

ANSWER: Chase denies the allegations in paragraph 39.

40. As for Plaintiff's costs and attorney's fees incurred in this matter the settlement agreement provides as follows:

> If a party breaches any provision of this Agreement, and if counsel is employed to enforce this Agreement, then the breaching party will pay to the other party all: (a) costs; (b) reasonable fees and charges of attorneys and their firms; and (c) reasonable charges of

experts, investigators and other agents incurred in the enforcement
of this Agreement, regardless of whether litigation is commenced.

ANSWER:    Chase admits only that the language in paragraph 40 is contained in the

Morris 1 settlement agreement.  Chase denies all remaining allegations in paragraph 40.

COUNT II
REPORTING TO CREDIT BUREAUS IN VIOLATION OF THE
REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)

41.    Plaintiff realleges paragraphs 1 to 34 as though they were fully reallaged herein.

ANSWER:    Chase expressly incorporates its responses to paragraphs 1 through 34 as if

fully set forth in response to paragraph 41.

42.    The Real Estate Settlement Practices Act reads in pertinent part:

(3)  Protection of credit rating

During the 60-day period beginning on the date of the servicer's receipt
from any borrower of a qualified written request relating to a dispute
regarding the borrower's payments, a servicer may not provide
information regarding any overdue payment, owed by such borrower and
relating to such period or qualified written request, to any consumer
reporting agency (as such term is defined under section 1681a of title 15).

12 U.S.C. § 2605(e)(3).

ANSWER:    Chase admits only that the language set forth in paragraph 42 is contained

in 26 U.S.C. § 2605(e)(3).  Chase denies all remaining allegations in paragraph 42.

43.    The servicing of Plaintiff's home mortgage loan is subject to the terms and
conditions set forth by statute in RESPA.

ANSWER:    Chase admits only that Plaintiff's loan is subject to RESPA.  Chase denies

all remaining allegations in paragraph 43.

44.    Plaintiff's letter of September 13, 2007 is a qualified written request as that term is
defined by RESPA, 12 U.S.C. § 2605(e)(1)(B).

ANSWER:    Chase denies the allegations in paragraph 44.

10

45. Chase reported derogatory information to the three major credit bureaus relating to the disputed payments during the 60 day period following the receipt of Plaintiff's qualified written request.

ANSWER: Chase denies the allegations in paragraph 45.

46. Chase's report on Plaintiff's credit history has caused plaintiff to be denied credit and to have current creditors revoke or reduce credit already granted.

ANSWER: Chase denies the allegations in paragraph 46.

## CHASE HOME FINANCE LLC'S
## AFFIRMATIVE DEFENSES

1. Plaintiff's complaint fails to state a claim under RESPA, 12 U.S.C. § 2601 *et seq.*

2. Plaintiff's claims are barred by the doctrine of unclean hands and fraud.

3. Plaintiff's claims are barred by her failure to join an indispensible party.

4. Plaintiff's claims are barred, in whole or in part, by her failure to mitigate any alleged damages.

5. Plaintiff's claims are barred by the doctrines of estoppel and waiver.

6. Plaintiff's claims are barred by 12 U.S.C. § 2605(f)(4).

CHASE HOME FINANCE LLC

Date: March 25, 2008

By: /s/ Robert J. Emanuel
One of its attorneys

Robert J. Emanuel
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, 22nd Floor
Chicago, Illinois 60611-3607
Telephone: (312) 840-7000
Facsimile: (312) 840-7900

461286.1

12

## CERTIFICATE OF SERVICE

The undersigned, an attorney, on oath, deposes and states that on this 25th day of March, 2008, a true and correct copy of Chase Home Finance LLC's Answer and Affirmative Defenses to Plaintiff's Complaint was filed electronically.   Notice of this filing will be sent to the following party via the Court's electronic filing system:

Lloyd J. Brooks
The Brooks Law Firm
15008 Woodlawn Avenue
Dolton, Illinois 60419
Telephone:    (708) 841-8000
Facsimile:    (708) 841-8080
Email: lloyd.brooks@thebrooksfirm.com


                                                   /s/ Robert J. Emanuel